0152

SOUTH CAROLINA LAW ENFORCEMENT DIVISION, Appellant, v. The "MICHAEL AND LANCE" (68 FOOT DOUBLE NET SHRIMP TRAWLER, WHITE HULL WITH BLACK TRIM, AND NORTH CAROLINA FISHERIES LICENSE NO. AC-892), Respondent.

(315 S. E. (2d) 171)

Court of Appeals

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Victor S. Evans* and *Asst. Atty. Gen. Clifford O. Koon, Jr.,* Columbia, *for appellant.*

*George L. Jones,* Charleston, *for respondent.*

April 13, 1984.

SANDERS, Chief Judge:

Appellant South Carolina Law Enforcement Division petitioned to have the respondent shrimp trawler "Michael and Lance" declared forfeited to the State of South Carolina pursuant to section 44-53-530 of the 1976 Code of Laws, as amended. The trial judge denied the petition. We affirm.

The "Michael and Lance" is property of C & B Seafood Company, Inc., a corporation organized under the laws of South Carolina for the purposes of commercial fishing and related activities. The sole stockholders (in equal shares), officers and members of the corporation's Board of Directors were George Steve Crosby, Sr. and James Larry Bryant. Crosby, who was in the wholesale and retail seafood business, provided the financial backing and was the operating manager of the business. Bryant was the master of the "Michael and Lance" and responsible for the day-to-day fishing activities.

Several months after incorporation, Bryant took the trawler to Fernandina Beach, Florida, for shrimping. He testified that on the return trip to Charleston he decided to haul a load of marijuana for a friend. His only cargo at that time was the marijuana, although once he got back to Charleston he caught 20-30 pounds of shrimp. The "Michael and Lance" was then searched and seized. Bryant was arrested and pleaded guilty in federal court to smuggling more than one pound of marijuana.

According to Bryant's further testimony, he had never discussed with Crosby the possibility of using the trawler for smuggling marijuana. He engaged in this activity for his personal gain, not for the benefit of the corporation. The "friend" who involved Bryant in the operation was in no way connected with C & B Seafood or Crosby. At the time of the hearing, Bryant had assigned his stock in the corporation and was no longer involved with it.

Crosby testified he and Bryant never discussed using the "Michael and Lance" for smuggling marijuana. Their discussions about the trip to Florida involved only the purpose of shrimping near the Saint Augustine area. Crosby also testified he received checks from Bryant for proceeds of shrimp unloaded in Florida. These checks were written on accounts of Florida wholesale fish houses or shrimp docks and were made payable to C & B Seafood.

In addition to the testimony of Bryant and Crosby, SLED's chief investigating officer in the case testified no evidence ‚was found linking C & B Seafood or Crosby to the smuggling operation.

The trial judge denied SLED's petition for forfeiture of the "Michael and Lance," finding Bryant had acted outside the course of his employment and scope of his authority. Thus, he held Bryant's knowledge could not be imputed to C & B Seafood which was an "innocent owner" as provided by the forfeiture statute.

This being an action at law, *Lane v. New York Life Ins. Co.*, 147 S. C. 333, 145 S. E. 196 (1928), our jurisdiction extends to correction of factual findings made without evidence reasonably supporting them. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976). Of course, it is also our duty to correct any error of law.

Section 44-53-530 deals with forfeiture and disposition of conveyances used to transport illegal drugs. Subsection (1) provides in part for the forfeiture of water going vessels used to unlawfully conceal, contain, or transport one pound or more of marijuana. Subsection (2) provides for forfeiture hearings, with the court giving "due consideration" to the interest of any innocent owner. Subsection (4)(a) specifically provides the interest of an innocent owner shall not be forfeited "unless such owner ... was a consenting party to, or privy to, or had knowledge of the concealment, containment, or transportation of a controlled substance." In construing this section, we are bound to a rule of strict construction because it is a forfeiture statute. *Wallace v. Wannamaker*, 231 S. C. 158, 97 S. E. (2d) 502 (1957).

I

SLED first argues C & B Seafood is not an "innocent owner" within the meaning of the statute because Bryant's knowledge concerning his illegal activity is imputed to the corporation under the law of agency.

A principal is affected with constructive knowledge of all material facts of which its agent receives notice while acting within the scope of his authority. *Crystal Ice Company of Columbia, Inc. v. First Colonial Corp.*, 273 S. C. 306, 257 S. E. (2d) 496 (1979) (relying upon *Hill v. Carolina Power & Light Co.*, 204 S. C. 83, 28 S. E. (2d) 545 [1943],

which holds notice to the agent, in order to bind the principal, must relate to the business for which the agent is authorized and to matters over which his authority extends).

The determination of whether Bryant was acting within the course of his employment and the scope of his authority must be made in light of all the surrounding circumstances, with the scope of Bryant's acts generally confined to acts reasonably necessary to accomplish the purpose of his employment and further the business of C & B Seafood. *Cf. Adams v. South Carolina Power Co.*, 200 S. C. 438, 21 S. E. (2d) 17 (1942) (where there is marked or unusual deviation in a master-servant relationship, court may rule on this issue as a matter of law).

The trial judge made factual findings that Bryant intended to conceal his illegal activity from C & B Seafood and engaged in this activity on his own initiative, for his individual gain and adverse to the interests of the corporation. The evidence previously discussed supports these findings. Obviously, it was not necessary for Bryant to smuggle marijuana to accomplish the purpose of his employment as master of the "Michael and Lance" or further the business of C & B Seafood. The trial judge was therefore correct in concluding that Bryant was acting outside the course of his employment and scope of his authority and, for this reason, his knowledge cannot be imputed to C & B Seafood. *See Crystal Ice.*[1]

---

[1] Citing the earlier case of *Young v. Pitts*, 155 S. C. 414, 152 S. E. 640 (1930), SLED also argues the knowledge of Bryant is imputed to C & B Seafood even if he was acting outside the course of his employment and the scope of his authority, because he was an officer and director of the corporation. While it is true that *Young* contains language saying the court "imputed" to a bank knowledge of its president and business manager, it does not appear from the facts of this case that he gained the knowledge outside the course of his employment and scope of his authority. Furthermore, the court specifically found actual knowledge by the bank.

Citing *South Carolina State Law Enforcement Division v. Crook*, 273 S. C. 285, 255 S. E. (2d) 846 (1979), SLED further argues C & B Seafood somehow neglected to use due care in choosing Bryant to operate the vessel. In *Crook*, the court reversed the trial judge's denial of forfeiture against the claim of a lienholder. However, this case involved the lienholder's failure to comply with subsection (5)(a) of the forfeiture statute requiring an affidavit signed by the borrower at the time of financing in order for the secured loan made to one charged with or convicted of a drug violation to survive forfeiture of the vehicle financed.

We have examined the case of *McComb v. Tiburon Aircraft, Inc.*, 276 S. C. 683, 281 S. E. (2d) 482 (1981), cited by SLED, and find it distinguishable. There, the court refused to accept a hearsay affidavit stating a plane had been stolen by agents of the corporation and used for an unauthorized purpose. Here, the trial judge chose to believe the testimony of Bryant and Crosby.

It therefore follows that C & B Seafood is an innocent owner of the "Michael and Lance" because it was not privy to and did not consent to or have knowledge of "the concealment, containment or transportation of a controlled substance" as provided by section 44-53-530.

## II

SLED next argues C & B Seafood had constructive possession of the marijuana because it had dominion or control over the "Michael and Lance." This argument was not presented below nor raised by exception and is therefore improperly presented for the first time on appeal. *Rosamond Enterprises, Inc. v. McGranahan*, 278 S. C. 512, 299 S. E. (2d) 337 (1983). However, we have considered it and find it lacks merit.

Recent criminal cases have held that ownership of the premises from which a controlled substance is seized permits inferences of the required knowledge and dominion or control over both the premises and the substance. *State v. Lane*, 271 S . C. 68, 245 S. E. (2d) 114 (1978); *State v. Ellis*, 263 S. C. 12, 207 S. E. (2d) 408 (1974). However, even if this principle of law is applicable to civil cases, these inferences are permissive in nature and do not conclusively establish constructive possession. Obviously, the trial judge as the finder of fact chose not to draw such inferences here.

In conclusion, we observe that federal statutes in this area do not contain "innocent owner" provisions. *See* Comprehensive Drug Abuse Prevention and Control Act of 1970, §§ 511, 511(a)(4), 21 U.S.C.A. §§ 881, 881(a)(4); Contraband Seizure Act, §§ 1, 2, 49 U.S.C.A. §§ 781, 782. The legislature in its wisdom may modify or repeal the provision of section 44-53-530 as to innocent owners, but this court cannot. *Busby v. State Farm Mutual Automobile Insurance Company*, 312 S. E. (2d) 716, S. C. App. (1984).

For these reasons, the order denying the petition for forfeiture is

Affirmed.

SHAW and BELL, JJ., concur.